**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ELIJAH JAMES COOK,

                Petitioner,                Case Number: 2:11-CV-12798
                                             HONORABLE NANCY G. EDMUNDS

v.

CARMEN PALMER,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Elijah James Cook filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, presently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, challenges his convictions for two counts of assault with intent to murder, assault with intent to rob while armed, felon in possession of a firearm, and felony firearm. He raises ten claims for habeas corpus relief. Respondent argues that the claims are procedurally defaulted, non-cognizable on habeas review, and/or meritless. The Court finds Petitioner's claims meritless and denies habeas relief.

### I.  Facts

Petitioner's convictions arise from an attempted robbery and a shooting that occurred on December 4, 2000 at the Dollar Stretcher Store in Detroit. Jhizzai Stewart, who was 14-years old at the time of trial, testified that at about 9:30 p.m. she went into the Dollar Stretcher Store with her friend Jason Harrison. Harrison entered the store first.

When Stewart entered, she saw Harrison was standing in line at the check-out line.  After a moment, a man she identified as Petitioner walked into the store, pulled out a gun, and demanded money from the cashier.  Petitioner was pointing the gun at the cashier.  She then heard several gunshots and saw a customer, Ewan Pugh, fall to the ground, and noticed that Petitioner was pointing his gun at Pugh.  Stewart began walking down a store aisle.  She heard more gunshots and then fell to the floor.  Stewart had been shot in the chest.  The store's owner, David Shumate, drove Stewart to the hospital, where she remained for about a week.

Stewart testified that she had seen Petitioner several times in the neighborhood prior to the shooting.  She had not known his name, but recognized him as the shooter.  She testified that he was the lone gunman.  On the day after the shooting, when she was questioned in her hospital bed, Stewart told police there were two people with the shooter.  At trial, she was certain that there was only one shooter and that the shooter was Petitioner.  She did not clearly remember what she had told police while hospitalized, but attributed the statement about possible accomplices to pain medications she was receiving.

David Shumate testified that he was the owner of the Dollar Stretcher store.  He testified that, at approximately 9:40 p.m., on the day of the shooting, he emerged from the store's storage room to see Petitioner holding a gun.  He recognized Petitioner as a regular customer who had been in the store 20 to 30 times previously.  When he saw the gun, Shumate dropped to the ground.  He heard several gunshots.  After the gunshots

2

stopped, he discovered that Stewart and another customer, Ewan Pugh, had been shot. Following the shooting, Shumate attended a live line-up and immediately identified Petitioner as the shooter.

Petitioner did not testify in his own defense, but presented three alibi witnesses, his mother and two sisters. All three testified that Petitioner was home at the time of the shooting and remained at home until police arrived at the home sometime between 11:00 p.m. and midnight to arrest him.

## II. Procedural History

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, one count of assault with intent to commit robbery, Mich. Comp. Laws § 750.89, one count of felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and one count of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On November 26, 2001, Petitioner was sentenced to 200 months to 30 years for the assault with intent to commit murder and assault with intent to commit robbery convictions, 20 months to 5 years for the felon-in-possession conviction, and 2 years' imprisonment for the felony-firearm conviction.

On November 25, 2002, Petitioner filed a motion for new trial and evidentiary hearing on the ground that he was prejudiced by the prosecutor's failure to produce two *res gestae* witnesses (Autumn Denard and Ewan Pugh). The trial court granted the request for an evidentiary hearing. *See* 1/17/2003 Order Granting Evidentiary Hearing,

3

ECF No. 21-14, Pg. ID 881.  The trial court then stayed the proceedings pending
completion of the prosecution's appeal of the order granting an evidentiary hearing.  *Id.* at
Pg. ID 880.  The Michigan Court of Appeals held that state law no longer required a
hearing when the prosecution did not produce a *res gestae* witness and, because the trial
court had already determined that Petitioner was not prejudiced by the prosecution's
failure to call two witnesses, the trial court erred when it granted an evidentiary hearing.
*People v. Cook*, 266 Mich. App. 290, 295-95 (Mich. Ct. App. 2005).  The Michigan
Supreme Court denied Petitioner's application for leave to appeal this decision.  *People v.
Cook*, No. 128982 (Mich. Dec. 5, 2005).

Petitioner's motion for new trial remained pending until the trial court denied it on
June 18, 2009.  *See* 6/18/09 Order, ECF No. 21-9, Pg. ID 759.  Petitioner then filed a late
application for leave to appeal in the Michigan Court of Appeals, raising these claims: (i)
a new trial should be ordered based upon new evidence of actual innocence; (ii)
prosecutor failed to disclose a confession made by Karl Willis exculpating Petitioner; and
(iii) ineffective assistance of trial counsel.  The Michigan Court of Appeals denied leave
to appeal.  *People v. Cook*, No. 292679 (Mich. Ct. App. Dec. 15, 2009).  Petitioner sought
leave to appeal in the Michigan Supreme Court.  The Michigan Supreme Court denied
leave to appeal.  *People v. Cook*, 486 Mich. 1044 (Mich. June 28, 2010).

Petitioner filed a motion for relief from judgment in the trial court, raising five
claims of ineffective assistance of counsel and a claim that appellate counsel was
ineffective for failing to raise the ineffective assistance of counsel claims on direct appeal.

4

The trial court denied the motion.  *See* 5/14/12 Opinion, ECF No. 21-12, Pg. ID 859-865.

Both state appellate courts denied Petitioner leave to appeal.  *People v. Cook*, No. 313408

(Mich. Ct. App. Sept. 5, 2013); *People v. Cook*, 495 Mich. 935 (Mich. 2014).

Petitioner then filed petition for a writ of habeas corpus, raising these claims:

I.     Cook was denied his constitutional right to due process and to a fair trial when the prosecutor failed to disclose to the defense evidence that someone other than Cook confessed to committing the crime.

II.    Newly discovered evidence reveals that Cook was denied his constitutional rights to due process and a fair trial.

III.   Cook was denied his constitutional rights to effective assistance of counsel, and to a fair trial when trial counsel failed to discover and present as evidence of innocence that (1) one of the victims who was never called to testify at trial would have said that he is one hundred percent sure that Cook is not the person who shot him and (2) that someone other than Cook confessed to committing the crime along with others.

IV.    Cook was denied his constitutional rights to effective assistance of counsel, and to a fair trial, when because of trial counsel's failure to investigate and present evidence the trier of fact never heard evidence that there was more than one shooter as opposed to just one and that the state's star witness had an extensive criminal background and a motive to testify falsely against Cook.

V.     Cook was denied his constitutional rights to effective assistance of counsel and to a fair trial when trial counsel failed to consult with Cook at any time prior to trial.

VI.    Cook was denied his constitutional rights to effective assistance of counsel, to a fair trial, and to due process when trial counsel failed to move for the exclusion of identification testimony that was based on prior suggestive identification procedures.

VII.   Cook was denied his constitutional rights to effective assistance of counsel and to a fair trial where trial counsel failed to investigate and to challenge the prosecution's case by using the testimony of an expert in eyewitness

5

identification.

VIII.   The cumulative effect of trial counsel's errors deprived Cook of his rights to effective assistance of counsel and a fair trial.

IX.   Appellate counsel was ineffective for failing to provide factual and evidentiary support for the claims that he raised on direct appeal and for failing to raise additional claims which were significant and obvious.

X.   This court should not uphold the state court's findings of facts and conclusions of law where the state court's findings of facts were clearly erroneous and an unreasonable determination of the facts and its conclusions of law ere contrary to federal law and misapplications of clearly established federal law.

## III. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably

6

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely

bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, – U.S. –, 131 S.Ct. 1388, 1398 (2011).

## IV. Discussion

### A. Claim #1: Alleged Brady Violation

Petitioner argues that the prosecutor violated *Brady v. Maryland,* 373 U.S. 83 (1963). Petitioner maintains that the police file related to his case contained what he characterizes as a confession by Karl Willis to the crimes for which Petitioner was

8

convicted.  Petitioner claims that the prosecution improperly withheld Willis's statement.

To demonstrate a *Brady* violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose."  *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotation marks omitted).  A defendant does not have to show that "disclosure of the evidence would have ultimately led to an acquittal;" he must, instead "establish that in the absence of the evidence he did not receive a fair trial, 'understood as a trial resulting in a verdict worthy of confidence.'"  *Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014), quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

The Michigan Court of Appeals denied this claim in a one-sentence summary order finding no merit in any of the claims raised in Petitioner's application for leave to appeal.  *See People v. Cook*, No. 292679 (Mich. Ct. App. Dec. 15, 2009).  The Michigan Court of Appeals' summary denial of Petitioner's claim is, nevertheless, entitled to deference under § 2254(d).  Where a state court denies a claim on the merits, but without explanation, "a habeas court must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible

9

fairminded jurists could disagree that those arguments or theories are inconsistent with [Supreme Court precedent].  *Harrington*, 562 U.S. at 102.  Accordingly, the question here is whether any reasonable argument consistent with established Supreme Court law could support the state court decision summarily rejecting Petitioner's claim.

Petitioner has not established that the State withheld Karl Willis's statement. Petitioner represents that he has not previously seen the statement, but presents no affidavit from defense counsel showing that the statement was not turned over to the defense.  As discussed below, there are obvious and crucial differences between the robbery and shooting Willis describes and that for which Petitioner was convicted. Defense counsel, therefore, could have received the statement and reasonably concluded it was not useful for the defense.

Second, even assuming that Willis's statement was not turned over to the defense, Petitioner has not shown that the statement was favorable to the defense or that the failure to disclose the evidence prejudiced the defense.  Willis was interviewed by police several days after the shooting in connection with a serious of robberies for which he was a suspect.  During this interview, Willis stated that, sometime before 10:00 p.m. on an unspecified date, he and someone named "Little Steve" were involved in an incident at a "beauty store" on Tireman, the street on which the Dollar Stretcher store was also located. ECF No. 21-18, Pg. ID 1098.  Willis was unarmed and guarding the door.  *Id.*  Little Steve entered the store and yelled for everyone to get down.  *Id.*  Willis states that as Little Steve approached the counter, the cashier began shooting and Little Steve returned

10

the gunfire.  *Id.*  Little Steve and Willis then fled the store and left in a getaway vehicle

driven by someone named "Matt."  *Id.*

"[F]avorable evidence is material, and constitutional error results from its

suppression by the government, 'if there is a reasonable probability that, had the evidence

been disclosed to the defense, the result of the proceeding would have been different.'"

*Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (*quoting United States v. Bagley*, 473 U.S.

667, 682 (1985)).

> The question is not whether the defendant would more likely than not have
> received a different verdict with the evidence, but whether in its absence he
> received a fair trial, understood as a trial resulting in a verdict worthy of
> confidence.  A "reasonable probability" of a different result is accordingly
> shown when the government's evidentiary suppression "undermines
> confidence in the outcome of the trial."

*Kyles*, 514 U.S. at 434 (*quoting United States v. Bagley*, 473 at 678.

The circumstances of the attempted robbery described by Willis differed in several

important respects from those described by the witnesses of the Dollar Stretcher robbery.

Willis describes the store as a beauty store.  The robbery described by Willis involved

two perpetrators in the store and one who drove the getaway car.  In addition, Willis

stated that a store employee opened fire.  In contrast, no witnesses of the Dollar Stretcher

shooting stated that an employee had a gun.  Finally, Willis's statement fails to specify

the date, month, or even year the attempted robbery of the beauty store occurred.  The

Court concludes that Willis's statement that an attempted robbery occurred somewhere on

Tireman Street, at a beauty store, on an unspecified date, cannot be characterized as

11

exculpatory evidence.  Petitioner has failed to show the state court's conclusion that this claim lacked merit was contrary to or an unreasonable application of Supreme Court precedent.

### B.  Claim #2: Actual Innocence

In his second claim, Petitioner argues that habeas relief should be granted because he is actually innocent.  He claims that his innocence is established by two pieces of newly-discovered evidence, Karl Willis's statement to police and an affidavit from Ewan Pugh.

An actual innocence claim does not constitute a constitutional claim in itself.  *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993), *cited in Schlup v. Delo*, 513 U.S. 298, 314 (1995).  The Sixth Circuit has interpreted *Herrera v. Collins* to hold that federal courts must not make independent determinations of guilt or innocence in habeas cases. *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005).  The function of a federal court reviewing a habeas corpus petition is to ensure that the petitioner is not imprisoned in violation of the constitution, not to correct errors of fact.  *Herrera*, 506 U.S. at 400. Therefore, this claim is not cognizable on habeas corpus review.  *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014).

### C.  Claims #3-7: Ineffective Assistance of Counsel

Petitioner's next five claims for habeas corpus relief concern his trial attorney's performance.  Petitioner argues that his attorney was ineffective in failing to:  (i) present testimony of Pugh or Willis to prove actual innocence; (ii) investigate and present

evidence that there was more than one shooter; (iii) present evidence that the prosecution's chief witness, David Shumate, had an extensive criminal background; (iv) consult with Petitioner prior to trial; (v) move to exclude identification testimony that was based upon an unduly suggestive identification procedure; or (vi) utilize an expert in identification testimony.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court

13

believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

      1.      Witnesses Pugh and Willis

First, Petitioner argues that counsel was ineffective in failing to find and call to testify Ewan Pugh and Karl Willis.

Pugh, who was shot during the robbery attempt, did not testify at Petitioner's trial. Four years after the robbery, Pugh executed an affidavit stating that he met Petitioner when the two were incarcerated at the same facility.  ECF No. 21-18, Pg. ID 1084.  Pugh recognized Petitioner's name as being connected to the robbery attempt, but, stated that Petitioner was not the man who shot him.  *Id.*  Petitioner argues that counsel was ineffective in failing to secure Pugh's presence at trial because, Petitioner presumes, Pugh would have testified in accordance with his affidavit.  However, Petitioner presents no evidence that counsel did not attempt to secure Pugh's presence or that counsel did not speak with Pugh prior to trial and determine that Pugh's presence would have been detrimental to the defense.  Further, the circumstances of Pugh's affidavit render its reliability questionable.  Pugh executed the affidavit four years after the crime and while incarcerated with Petitioner.  Petitioner, therefore, has failed to show that his defense counsel was ineffective in failing to secure Pugh's presence or that there is a reasonable probability that Pugh's testimony would have resulted in a different outcome.

Petitioner's claim regarding counsel's failure to secure Willis's testimony is also

meritless.  As discussed above, Willis's statement to police was so lacking in specifics related to Petitioner's crime, including date and location of the attempted robbery, that there would have been little, in any, value to the defense to present his testimony.  Thus, Petitioner has failed to satisfy *Strickland's* prejudice prong with respect to this claim.

> 2.     Physical Evidence of Multiple Shooters

Next, Petitioner argues that his attorney was ineffective in failing to investigate the physical evidence at the crime scene.  He claims that if counsel had done so he would have been able to show that there was more than one shooter.  In denying Petitioner's motion for relief from judgment, the trial court rejected this claim holding:

> A defense investigator was appointed at the time of trial to perform, among other tasks, the very investigation that defendant now claims was not performed.  Defendant does not raise a valid reason for requesting additional analysis of the slugs from the gun outside of his belief that the results could yield material evidence that could have led to a different outcome at trial.  The record does not demonstrate that defense counsel's performance was unreasonable and her trial strategy and determinations will not be substituted with the judgment of this Court.

ECF No. 21-12, Pg. ID 863.

An ineffective assistance of counsel claim for failure to investigate must be based upon more than mere speculation that further investigation would have been beneficial. *Hodge v. Haberlin*, 579 F.3d 627, 650 (6th Cir. 2009).  Petitioner's arguments in support of this claim amount to mere speculation.  The state trial court's decision denying this claim on that basis is reasonable.

> 3.     Criminal Background of David Shumate

15

Next, Petitioner argues that counsel was ineffective in failing to investigate the background of prosecution witness David Shumate.  Petitioner argues that had she done so she would have discovered that Shumate had an "extensive criminal background and was on federal supervised release" at the time of the shooting.  ECF No. 16, Pg. ID 148. This criminal background, Petitioner maintains, would have provided Shumate a motive to lie.  Petitioner speculates that Shumate had a firearm, fired it during the attempted robbery, and accidentally struck one of the victims, but Shumate declined to admit any of this to police because possession of a firearm would have violated the terms of his supervised release.  This claim is based only upon Petitioner's conjecture and finds no support in the record.  Habeas relief is denied.

          4.     Pretrial Preparation

Petitioner argues that his attorney was ineffective because she failed to communicate with Petitioner prior to trial.  The trial court denied this claim when it denied Petitioner's motion for relief from judgment, finding defense counsel performed competently.

It is clear from the record that Petitioner's trial counsel was adequately prepared for trial. She was intimately familiar with the facts of the case, effectively cross-examined prosecution witnesses, and ably presented several defense witnesses.  There is no indication in the record that counsel was had not prepared adequately for trial.  Nor is there any indication that Petitioner was prejudiced by the amount of time his attorney prepared for trial.  Absent a showing of prejudice, Petitioner cannot show he received

16

ineffective assistance of counsel.

     5.    Identification Testimony

Petitioner argues that counsel was ineffective in failing to object to the identification testimony of Jason Harrison and Jhizzai Stewart on the basis of unduly suggestive pretrial identification procedures.  First, Petitioner argues that Harrison identified him in the line-up for the sole reason that he was the only person who looked the same age as the perpetrator.  Second, he argues that Stewart's identification was tainted because the first-time she was asked to identify Petitioner was at the preliminary examination.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, — U.S. —, 132 S.Ct. 716, 718 (2012).  A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers*' test).  But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence. *Braithwaite,* 432 U.S. at 112-113.  Instead, the Court has held that determining whether to suppress the identification should be done on a case-by-case basis. *Id.* at 116; *see also Biggers*, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *U.S. v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Id.* Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. *Brathwaite*, 432 U.S. at 114.

Petitioner was 17 years old at the time of the line-up viewed by Harrison. ECF No. 21-18, Pg. ID 1093. The line-up consisted of five additional men, whose ages were listed as 19 (two men), 20, 24, and 31. Petitioner's height was recorded as 5'7". One other participant was also listed as being 5'7". The remaining participants were 5'8, 5'9", 5'11", and 6'0". Based upon the record before the Court, it appears that the line-up contained men of similar age and size to Petitioner. While Harrison did not identify Petitioner with overwhelming certainty at the line-up, that does not provide a basis for suppression of the identification. Instead, it provided an avenue for defense counsel's cross-examination of Harrison at trial. Defense counsel seized this opportunity and extensively and effectively cross-examined Harrison about the identification. Petitioner has not shown that the identification procedure was impermissibly suggestive.

Petitioner also argues that counsel should have moved to suppress Stewart's identification because she did not attend a line-up before identifying Petitioner at the preliminary examination. The Michigan Court of Appeals denied this claim in a one-sentence order, but AEDPA deference, nevertheless, is given to the decision. *Harrington*,

18

562 U.S. at 102.

"The Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry,* 132 S.Ct. at 730. Although the Supreme Court has recognized that "all in-court identifications" "involve some element of suggestion[,]" it has also determined that unless police misconduct is present, such identifications do not require a pre-trial determination of admissibility. *Id.* at 727-28. The mere fact that Petitioner was identified by Stewart at the preliminary examination does not make the identification procedure unreliable or unnecessarily or impermissibly suggestive. The reliability of the in-court identification was for the jury to decide. *Id.* at 729-30. Counsel, therefore, was not ineffective for failing to move for the suppression of Stewart's identification testimony.

Moreover, even assuming that the pre-trial identification procedure was unduly suggestive, Petitioner failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. Stewart recognized Petitioner from the neighborhood when he walked into the store. He walked close to her and she had the opportunity to view him for a reasonable amount of time. Stewart identified Petitioner with a high degree of certainty and had no doubt that he was the shooter. Given these circumstances, the Court concludes that Petitioner fails to show that the identification was unreliable.

      6.    Expert Witness

Finally, Petitioner argues that counsel was ineffective in failing to call an expert witness on eyewitness identification testimony. The Michigan Court of Appeals denied this claim without discussion.

"No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel vigorously cross-examined the witnesses about the problems with their identification. Petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of expert witness on identification, where counsel elicited testimony to discredit the witnesses' identification testimony. Habeas relief is denied.

### D. Claim #8: Cumulative Effect of Alleged Errors

Petitioner alleges that he is entitled to habeas relief because the cumulative effect of the alleged errors deprived him of a fair trial and due process of law. On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005)). Therefore, Petitioner is not entitled to relief on this claim.

### E. Claim #9: Ineffective Assistance of Appellate Counsel

Finally, Petitioner raises a claim that his appellate attorney was ineffective in

20

failing to raise claims raised in this habeas petition but not raised on direct appeal and in failing to provide factual and evidentiary support for the claims that were raised.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The claims raised in this petition and on collateral review in state court are meritless. Appellate counsel need not raise non-meritorious claims on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). In addition, Petitioner fails to show how appellate counsel could have better supported the claims that were raised on direct appeal. Accordingly, the Court will deny habeas corpus relief on this claim.

### F.      Claim #10: Habeas Relief Should be Granted

Finally, Petitioner's final claim for habeas relief fails to set forth an independent claim for relief. Instead, Petitioner argues that the preceding claims satisfy § 2254(d)'s rigorous standard for habeas corpus relief. The Court has carefully considered each of Petitioner's claims and found that none warrant habeas relief. This final claim for habeas relief is, therefore, denied.

### V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed

unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be granted.  Therefore, the Court will deny a certificate of appealability.

## VI.  Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

Petitioner's Motion for Discovery/Appointment of Investigator and Appointment of Counsel (ECF No. 26) and Motion for Leave to Amend Motion to Invoke Discovery Process (ECF No. 27) are **DENIED AS MOOT.**

**SO ORDERED**.

s/ Nancy G. Edmunds_____
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

DATE: <u>February 2, 2016</u>